UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

Case No.

BROLECO WORLDWIDE, INC., a Massachusetts Corporation

   Plaintiff

v.

GLT TECHNOVATIONS, LLC, a Nevada Limited Liability Company, and

GERALD LETO

   Defendants

**COMPLAINT**

**AND JURY TRIAL DEMAND**

The Plaintiff Broleco Worldwide Inc. (Broleco) hereby alleges as follows:

**THE PARTIES**

1. Plaintiff Broleco Worldwide Inc. (Broleco) is a duly organized Massachusetts Corporation with a principal place of business located in North Andover, Massachusetts.

2. The Defendant GLT Technovations, LLC, (GLT) is a Nevada Limited Liability Company with a registered place of business at 112 North Curry Street, Carson City, Nevada.

3. Gerald Leto (Leto) is a person with a residence at 1802 Potrero Dr., San Jose, California.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 1367, and 2201.

5. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332, as complete diversity among the parties exists, and the amount in controversy exceeds $75,000.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (d).

## FACTUAL ALLEGATIONS

### Background

7. In approximately 2008 or 2009, Joel Brother, the President of Broleco, (Brother) was contacted by Leto who claimed to have invented a process to make leather work with touch screens.

8. Shortly thereafter, in July 2009, Leto presented himself to Broleco. Leto described a procedure for finishing leather that would enable it to work with capacitive touch screens on devices such as mobile phones.

9. Broleco provided Leto with facilities to demonstrate his process. Using his process, Leto treated some leather with a mixture of chemicals, the nature and proportions of which were not disclosed to Broleco, and declared the leather was now "capacitive" and functional with touch screens.

10. The leather was then shipped to a Broleco customer, who reported that it did not work as promised. Out of several issues, the primary one was that the finish applied to the leather would rub off and lose its capacitive properties, rendering it essentially useless for its intended purpose.

11. Broleco determined that merely finishing the leather would not be sufficient to properly adhere the capacitive properties to the leather, and suggested trying to tan the leather instead.

12. Leto had no experience with tanning, while Broleco was extensively and intimately familiar with the process, which was and is the foundation of its business.

13. Leather tanning is a general term for the various processing steps involved in converting animal skins or hides into leather.

14. There are three primary steps of processing hides or skins. The first is beamhouse operations which wash and soak the hides or skins and (at most tanneries) chemically remove the attached hair. The second is tanyard processes in which the tanning agent (primarily chromium) reacts with and stabilizes the proteinaceous matter in the hides or skins. The third is retanning and wet finishing processes which accomplish further processing by using additional tanning agents (again primarily chromium although other agents are also used) and other chemical agents such as dyes, lubricants and various finishes.

15. Broleco typically purchased hides that had already undergone the first process, and treated hides using the second and third processes.

16. Broleco tasked its employee, Donald Wager (Wager) with trying to develop a procedure to tan material into the leather that would enable it to work with touch screens, be pliable enough to allow it to be used for gloves, and be durable enough that it would retain the ability to work with touch screens over time and after extended use.

17. Wager was and is the Broleco employee responsible for the "wet end" of its operation, i.e., tanning and retanning. These are the processes done to raw skins or semi-processed skins to make them into dyed leather. Tanning and retanning is a real art and requires a significant amount of education, training and practical experience. Wager has all three of these things and is generally considered one of the best at his profession in the community, if not North America. Tanning and retanning development projects are much more involved, time consuming and expensive. The equipment needed is very specialized and cannot be easily duplicated.

18. After the failure of Leto's process for applying a capacitive topical layer on tanned leather, Broleco expended significant resources on having Wager develop a process that would impregnate the necessary ingredient into the central layer of the skin (corium junction). This posed a multitude of problems that negatively impact the standard functionality of the leather including tear strength and color fastness (bleeding or cracking).

19. Wager was responsible for developing the process that made the capacitive leather both functional, pliable and durable enough to be a viable product.

20. Broleco also funded Leto's presence, providing him with, among other things, a car and hotel room and air fare. However, it soon became evident that Leto did not understand tanning and was not adding any value to the development process.

21. Leto was disruptive and hampered the development process. More importantly, it eventually became clear that Leto was actually there to learn what Wager was doing and not to provide useful input.

22. After expending significant time, effort and money, Wager eventually developed a successful process for tanning leather to make it capacitive.

23. On information and belief, at the time Wager was working on a process to impregnate leather to durably lend it capacitive properties, Leto had filed and continued to file a series of four provisional patent applications in the U.S. Patent Office describing a coating process for making capacitive fabrics, including leather.

24. In June 2010, Leto prepared and filed in the name of GLT Technovations, LLC, an international patent application under the Patent Cooperation Treaty (PCT) designating the US in the US Receiving Office. International Application No. PCT/US2010/037286, filed June 3, 2010. This application names Leto, Andrew Poutiatine, and Wager as co-inventors, and on the final two pages of the specification (pp.

37-38), under the heading "Method Example 1: Impregnating the leather", a "wet" process is described for incorporating a conductive material (carbon black) into leather by tanning to render the leather capacitive and capable of operating touch screens. On information and belief, this example was composed from the observations and notes Leto made of a successful tanning process developed by Wager for producing capacitive leather. On information and belief, no part of this description of Method Example 1 appears in any of the previous provisional application filings made by Leto.

25. In or around December 2010, Leto informed Wager that he had been named as a co-inventor on the international patent application.

26. On November 30, 2011, Leto filed U.S. Patent Application Ser. No. 13/307,681 as a continuation of International Application No. PCT/US2010/037286, naming Leto and Wager as applicants/inventors. This application was prosecuted under the direction of Leto without input from Wager, except that in January 2011, Wager provided Leto with a signed page 3 of a Form PTO/SB/01 "Declaration – Utility or Design Patent Application", which Leto needed to complete filing formalities for the application in the U.S. Patent Office.

27. On or about February 21, 2012, Leto submitted the Form PTO/SB/01 along with a substitute specification for U.S. Ser. No. 13/307,681, containing Claims 1 to 75.

28. Also on or about February 21, 2012, Leto submitted to the Patent Office, *inter alia*, a Form PTO/SB/80 "Power of Attorney to Prosecute Applications Before the USPTO" signed by Leto on behalf of GLT, purporting to be the assignee empowered to act on behalf of the applicants. The Power of Attorney was not filed with a statement pursuant to 37 CFR § 3.73 establishing a chain of title from all applicants to the assignee.

29. On August 27, 2012, the Patent Office mailed a Notice Regarding Power of Attorney to the representatives of Leto, rejecting the Power of Attorney because the required certification under 37 CFR § 3.73 had not been received. Such a certification could not have been made, because at this point in time applicant Wager had not assigned his rights in the invention to GLT or any other entity.

30. An official Filing Receipt for U.S. Ser. No. 13/307,681 naming Leto and Wager as applicants was mailed by the Patent Office to Leto's representatives on August, 27, 2012.

31. Examination of the application began on or about February 4, 2013, when a formal restriction and species election requirement was mailed to Leto's representatives.

32. On or about March 4, 2013, in response to the restriction and species election requirement, Leto elected to prosecute claims drawn to black leather articles treated with a conductive material. The claims subsequently examined were Claims 23-24 (directed to a glove comprising leather); Claims 48-57 (directed to a black leather product); and Claims 70-73 (directed to a glove comprising a black leather product according to previous claims or a glove comprising leather, at least a portion of which is impregnated with a composition of carbon black and a binder).

33. On or about May 24, 2013, the first substantive Office Action was mailed by the Patent Office to Leto's representatives. From May 28, 2013 through April 10, 2014, Leto's representatives took various actions and made various submissions to the Patent Office in response to this first Office Action.

34. Independent of this activity, on February 20, 2014, Wager executed an assignment of all his rights to the invention described in International Application No. PCT/US2010/037286 and U.S. Ser. No. 13/307,681 to Broleco, Inc. That assignment was

recorded in the Patent Office by Wager's representatives on February 28, 2014 at Reel 032321, Frame 0495.

35. On July 3, 2014, a final Office Action was mailed by the Patent Office to Leto's representatives.

36. On September 23 and 24, 2014, using new representatives, Leto filed a response to the final Office Action of July 3, 2014, in which all claims except pending Claim 75 were canceled, and Claim 75 was amended to recite a glove formed at least in part of a modified leather material which is impregnated with a composition comprising a non-metallic electrically conductive agent "which comprises carbon black" and a binder, wherein the conductive agent and binder "are impregnated into . . . the fiber matrices of at least that part of the modified leather material of the glove" at a sufficient concentration such that the part of the glove comprising the modified leather material is effective to functionally interact with a touch screen.

37. Simultaneously with the papers submitted on September 23, 2014, Leto's new representatives filed:

    1. a Request to Correct Inventorship Under 37 CFR § 1.48(a);
    2. a Supplemental Application Data Sheet crossing-out Wager from the listing of applicants and identifying the new representatives;
    3. a Form PTO/SB/81 "Power of Attorney or Revocation of Power of Attorney with a New Power of Attorney and Change of Correspondence Address" executed by Leto as an officer of GLT and identifying GLT as "Assignee of record of the entire interest" in the application;
    4. a Statement Under 37 CFR § 3.73(b) certifying a chain of title from Leto as (sole) applicant/owner of the application to GLT as assignee of the entire right, title and interest in the application; and

5. an Assignment – Worldwide, executed September 23, 2014 by assignor Leto, conveying his rights in U.S. Ser. No. 13/307,681 to GLT. The Request to Correct Inventorship filed on September 23, 2014 includes the statements that the request to correct inventorship was "due solely to the cancelation of claims" and was being made "without deceptive intent."

38. As a matter of fact, at the time of executing and filing the papers submitted on September 23-24, 2014, Leto was not the owner of the entire right, title and interest in the application Ser. No. 13/307,681, and GLT did not become the assignee of the entire right, title, and interest in application Ser. No. 13/307,681 by virtue of the Assignment – Worldwide executed by Leto on September 23, 2014. Notwithstanding this mistake of fact, the Patent Office issued a Corrected Filing Receipt and a Notice of Acceptance of Power of Attorney to the new representatives on October 2, 2014. On information and belief, prosecution of the prosecution of the application was thereafter carried out under the direction of Leto via the new representatives.

39. The papers filed by Leto on September 23-24, 2014, and a supplemental response filed on October 10, 2014, did not result in allowance of Claim 75. Advisory Action mailed October 28, 2014.

40. On or about November 13, 2014, Leto's new representatives filed a Request For Continued Examination (RCE), accompanied by an Amendment canceling all claims and introducing new Claims 107, 108, and 109. Claim 107 was directed to a glove defined in substantially the same form as prior Claim 75 but including the recitation that the concentration of the carbon black impregnated into the fiber matrices of the leather of the glove was "at least 10% carbon black based on the dry weight of the leather. . ." Claim 108 was directed to a glove defined in substantially

the same form as prior Claim 75 but including the recitation that the concentration of the carbon black impregnated into the fiber matrices of the leather of the glove was "at least 15% carbon black based on the dry weight of the leather. . ."

41. In the Amendment, the recitations relating to the concentration of carbon black being at least 10% (or 15%) based on the dry weight of the leather were stated to be supported by the disclosure of "Method Example 1: Impregnating the leather" appearing at page 37 of the original application.

42. No amendment of the inventorship was requested as a result of the cancelation of Claim 75 and the introduction of Claims 106 and 107 which incorporated disclosures made in the "Method Example 1: Impregnating the leather" section of the application.

43. Claims 107 and 108 were again amended in a paper filed January 12, 2015 by Leto's representatives. Finally, in a paper filed March 2, 2015, Claim 107 was amended to have the language deemed allowable and which is reflected in Claim 1 of U.S. Patent No. 9,051,621 which resulted from the application Ser. No. 13/307,681: The final Claim 107 recited that the conductive agent and binder were impregnated into the leather of the glove "and further wherein the concentration of carbon black is 10% to 25% based on the dry weight of the leather to be modified so as to provide for modified leather material. . . which can functionally interact with a touch screen. . ." Claim 108 was canceled.

44. Again, the support for the final recitations of Claim 107 (Claim 1 in U.S. Patent No. 9,051,621) was stated by Leto's representatives to be found in the final paragraph of "Method Example 1: Impregnating the leather", which appears on pages 37-38 of the original application and pages 39-40 of the Substitute Specification submitted by

Leto.  No amendment of the inventorship was requested in conjunction with the final amendment of Claim 107 to secure allowance.

45. Plaintiff submits that "Method Example 1: Impregnating the leather" appearing in the application Ser. No. 13/307,681 and U.S. 9,051,621 reflects the inventive contribution of Wager, and that the claims of the issued patent, U.S. 9,051,621 (the '621 Patent) recite an invention which Wager made or to which Wager contributed as an inventor.

## COUNT I
### Correction of Inventorship under 35 U.S.C. § 256 on U.S. Patent No. 9,051,621 – Against all Defendants
### (Donald Wager as Sole Inventor)

46. Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

47. Donald Wager is the sole inventor of all the claims of the '621 Patent.

48. Through omission, inadvertence, and/or error, Donald Wager was not listed on the '621 Patent as the inventor of all the inventions claimed in the '621 Patent.

49. The omission of Donald Wager as the inventor on the '621 Patent occurred without any deceptive intent on the part of Donald Wager.

## COUNT II
### In the Alternative:
### Correction of Inventorship under 35 U.S.C. § 256 on U.S. Patent No. 9,051,621 – Against all Defendants
### (Donald Wager as Joint Inventor)

50. Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

51. Donald Wager is a joint inventor all the claims of the '621 Patent.

52. Through omission, inadvertence, and/or error, Donald Wager was not listed on the '621 Patent as a joint inventor of the inventions claimed in the '621 Patent.

53. The omission of Donald Wager as a joint inventor on the '621 Patent occurred without any deceptive intent on the part of Donald Wager.

## COUNT III
### Declaratory Judgment Under 28 U.S.C. §§ 2201 and 2202 – Against all Defendants

54. Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

55. Donald Wager is the sole or a joint inventor of the '621 Patent, the claimed inventions of which were conceived by Donald Wager.

56. Donald Wager is not listed as the inventor or a joint inventor of the '621 Patent.

57. An actual, present, and justiciable controversy has arisen concerning the inventorship of the '621 Patent.

58. Plaintiff seeks declaratory judgment from this Court that Donald Wager is the sole or a joint inventor of the '621 Patent, and any other patents owned or controlled by Defendants of which Donald Wager is the inventor or an inventor, and any injunctive relief necessary to enforce its rights under that declaratory judgment.

## COUNT IV
### Conversion – Against GLT and Leto

59. Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

60. Plaintiff owns the intellectual property and the intellectual property rights of Donald Wager, including the right to any inventions based on his intellectual property and to any patent rights (including assignment documents), U.S. and foreign, arising from those inventions.

61. GLT and Leto have wrongfully exercised dominion over the property of Plaintiff either through alleging sole ownership of rights under the '621 patent, by licensing

those rights, by purchasing the rights, by claiming the rights to the '621 Patent as part of their intellectual property estate, and refusing to name Donald Wager as either the sole or joint inventor of the '621 Patent, and other patents and patent applications claiming his inventions.

62. As a direct and proximate result of GLT and Leto's conversion of Plaintiff's property, Plaintiff has suffered, and will continue to suffer harm and substantial damages in the form of loss of value of the patents and the revenues derived from licenses to that property.

## COUNT V
### Replevin – Against GLT and LETO

63. Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

64. Plaintiff owns the rights to Donald Wager's intellectual property and the intellectual property rights of Donald Wager, including the right to any patents based on his intellectual property and to any patent documents (including assignment documents), U.S. and foreign, claiming those rights. claiming those rights.

65. Plaintiff has demanded that GLT and Leto name Donald Wager as the sole or joint inventor on the '621 Patent, and other patents and patent applications claiming his inventions, and GLT and Leto have failed, refused, and neglected to do so.

66. Plaintiff's rights to Donald Wager's intellectual property and the intellectual property rights, including the right to any patents based on his intellectual property and to any patent documents (including assignment documents), U.S. and foreign, of Donald Wager are superior to the rights of GLT and Leto, and Plaintiff is entitled to immediate possession.

67. By virtue of the foregoing acts, conduct, and omissions of GLT and Leto, Plaintiff is entitled to take immediate possession of Donald Wager's intellectual property and the intellectual property rights, including the right to any patents based on his intellectual property and to any patent documents (including assignment documents), U.S. and foreign, of Donald Wager.

68. As a direct and proximate result of Leto and GLT's wrongful detention of Plaintiff's property, Plaintiff has suffered, and will continue to suffer harm and substantial damages in the form of loss of value of the patents and the revenues derived from licenses to that property.

## COUNT VI
## Unjust Enrichment – Against GLT and Leto

69. Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

70. Plaintiff conferred a benefit on GLT and Leto by providing them valuable intellectual property through Donald Wager.

71. GLT and Leto accepted and retained Plaintiff's valuable intellectual property, and used the intellectual property to their own advantage, at Plaintiff's expense.

72. GLT and Leto have been and continue to be unjustly enriched by profiting from the wrongful conduct described in this Complaint. In particular, GLT and Leto have made wrongful use of Plaintiff's property by asserting inventorship, refusing to name Donald Wager as either the sole or a joint inventor, and deriving an unjust benefit from licensing these property rights and from commercially exploiting Donald Wager' inventions. It would be inequitable for GLT and Leto to retain these benefits under these circumstances.

73. Plaintiff has incurred, and continues to incur detriment in the form of loss of money and property as a result of GLT and Leto's wrongful use of Donald Wager' intellectual property and intellectual property rights, including the right to any patent based on his intellectual property and to any patent documents (including assignment documents), U.S. and foreign that belong to Plaintiff. The intellectual property and the intellectual property rights, including the right to any patents based on Donald Wager's inventions and to any patent documents (including assignment documents), U.S. and foreign, are unique and there is no adequate remedy at law.

74. The harm to Plaintiff is and continues to be substantial and irreparable.

## COUNT VII
**Common Law Unfair Competition – Against GLT and Leto**

75. Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

76. GLT and Leto have represented and continue to represent to the public that they developed and own the intellectual property that they wrongfully appropriated without Plaintiff's authorization and consent.

77. In so doing, GLT and Leto are passing off Plaintiff's intellectual property as their own in violation of the common law.

78. Plaintiff is informed and believes, and thereupon alleges, that GLT and Leto's wrongful passing off of Plaintiff's intellectual property as their own has caused, and will cause, consumer confusion, and has been a substantial factor in directly and proximately causing damages and irreparable harm to Plaintiff.

## COUNT VIII
**False Advertising in Violation of Mass. Gen. Laws c. 266, § 91 –
Against GLT and Leto**

79. Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

80. By reason of their wrongful conduct, including, but not limited to, promoting and advertising Plaintiff's intellectual property as their own on their website and elsewhere, GLT and Leto violated Massachusetts General Laws c. 266, § 91.

81. GLT and Leto's wrongful conduct is a substantial factor in directly and proximately causing damages and irreparable harm to Plaintiff, and Plaintiff will continue to be harmed so long as Defendants' wrongful conduct continues.

## COUNT XI
### Violation of Mass. Gen. Laws c. 93A § 11 – Against GLT and Leto

82. Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

83. At all relevant times, Plaintiff and GLT and Leto were engaged in trade or commerce within the meaning of Massachusetts General Laws. c. 93A, §§ 1 and 11.

84. GLT and Leto's unfair acts and practices pursuant to Massachusetts General Laws. c. 93A include, without limitation, unjust enrichment and conversion, as set forth in this Complaint.

85. The wrongful actions described herein were willful and knowing.

86. As a direct and proximate result of the foregoing knowing and/or willful unfair acts and practices of GLT and Leto, Plaintiff has suffered and will continue to suffer significant harm in the form of loss of money or property, including but not limited to, the loss of value of the rights to any patents based on Donald Wager's intellectual property and to any patent documents (including assignment documents), U.S. and foreign, and the revenues derived from licenses to that property.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff request that the Court grant the following relief:

A. Judgment in Plaintiff's favor on each count;

B. Order the USPTO to correct the inventorship on U.S. Patent No 9,051,621 to name Donald Wager sole inventor, or in the alternative as a joint inventor;

C. Alternatively, order the Defendants to sign the requisite documents to correct the inventorship on U.S. Patent No 9,051,621 to name Donald Wager sole inventor, or in the alternative as a joint inventor;

D. Order the USPTO to correct the inventorship on U.S. Patent No 9,051,621 to name Donald Wager sole inventor, or in the alternative as a joint inventor;

E. Alternatively, order the Defendants to sign the requisite documents to correct the inventorship on U.S. Patent No 7,078,196 to name Donald Wager sole inventor, or in the alternative as a joint inventor;

F. Issue a declaratory judgment naming Donald Wager as sole inventor, or in the alternative as a joint inventor, of U.S. Patent Nos. 9,051,621 as requested herein;

G. Issue a declaratory judgment naming Donald Wager as sole inventor, or in the alternative as joint inventor, of all other U.S. and foreign patents and patent applications in which capacitive leather is claimed, and all order assignment of all right title and interest in all such other U.S. and foreign patents and patent applications to Plaintiff;

H. Pursuant to 28 U.S.C. § 2202, issue any injunctions necessary to enforce the declaratory judgment naming Donald Wager as sole inventor, or in the alternative as a joint inventor, of U.S. Patent Nos. 9,051,621, and all other U.S. and foreign patents and patent applications in which capacitive leather is claimed, and

order assignment of all right title and interest in U.S. Patent Nos. 9,051,621, and all other U.S. and foreign patents and patent applications to Plaintiff;

    I.    Order Defendants to disgorge to Plaintiff all monies and/or profits derived from the wrongful conduct alleged herein;

    J.    An award to Plaintiff of the amount by which Defendants have been unjustly enriched;

    K.    Award appropriate royalties for Defendants' use of Plaintiff's intellectual property;

    L.    Order an accounting of any monetary or other benefits received by Defendants as a result of their wrongful conduct;

    M.    Order a constructive trust over all information, patent applications, patents, technology, products, and other materials in the possession, custody, or control of Defendants that wrongfully constitute, contain, were based on, and/or derived in whole or in part from the use of Plaintiff's intellectual property, and an order that Defendants immediately transfer to Plaintiff all right, title, and interest in such information, patent applications, patents, material, technology, and products;

    N.    Award money damages to Plaintiff against Defendants;

    O.    Award treble damages for Defendants' willful and knowing violations of Mass. Gen. Laws c. 93A;

    P.    Award prejudgment interest according to proof;

    Q.    Award Plaintiff's reasonable costs and attorneys' fees; and

    R.    Award such other and further relief, including equitable relief, as this Court may deem just and proper.

**JURY TRIAL DEMAND**

The Plaintiff hereby demands a trial by Jury on all issues so triable

        Defendant
        BROLECO WORLDWIDE, INC.
        By its attorney,

        /s/ William H. DiAdamo
        William H. DiAdamo
        BBO#558883
        William H. DiAdamo LLC
        40 Appleton Way
        Lawrence, MA 01840
        978-229-2345
        william@diadamo.com